UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

DONALD J. MARTIN

Case No. 1:08-cr-124-JPH-TAB-01

ORDER ON MOTION FOR
SENTENCE REDUCTION UNDER
18 U.S.C. § 3582(c)(1)(A)
(COMPASSIONATE RELEASE)

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction

in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided

in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:08-cr-00124-JPH-TAB |
| | ) | |
| DONALD J. MARTIN, | ) | -01 |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Donald J. Martin has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkt. 175. Mr. Martin seeks immediate release from incarceration based on his risk of severe illness should he contract COVID-19 and because he would like to serve as a caretaker for his grandmother. Dkt. 182. For the reasons explained below, his motion is **DENIED**.

## I.    Background

In 2014, Mr. Martin pled guilty to one count of possession with intent to distribute 28 grams or more of a mixture containing cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 841(a)(1) and 851(a)(1) (Count 1), and one count of carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2). Dkts. 146, 156. According to the presentence investigation report, law enforcement officials pulled over a minivan driven by Mr. Martin. Dkt. 152. After determining he had an outstanding warrant, officers asked him to exit the vehicle. Mr. Martin did so but then attempted to re-enter the vehicle and escape. An officer had to deploy his taser three times to stop Mr. Martin and take him into custody.  The officers found a loaded revolver and 68.78 grams of crack cocaine in Mr. Martin's pockets. The

Court sentenced Mr. Martin to 210 months of imprisonment on Count 1 and 60 months of imprisonment on Count 2, to be served consecutively. Dkts. 155, 156. The Court also imposed an 8-year term of supervised release. The Bureau of Prisons (BOP) lists Mr. Martin's anticipated release date (with good-conduct time included) as February 28, 2028.

Mr. Martin is 40 years old. He is currently incarcerated at FCI Greenville in Greenville, Illinois. As of December 17, 2021, the BOP reports that no inmates and no staff members at FCI Greenville have active cases of COVID-19; it also reports that 609 inmates at FCI Greenville have recovered from COVID-19 and that no inmates at FCI Greenville have died from the virus. https://www.bop.gov/coronavirus/ (last visited Dec. 20, 2021). The BOP also reports that 1072 inmates at FCI Greenville have been fully inoculated against COVID-19. *Id.* That is, almost 90 percent of the inmates at FCI Greenville have been fully inoculated against COVID-19. *See* https://www.bop.gov/about/statistics/population_statistics.jsp (showing that as of Dec. 16, 2021, the BOP reports that FCI Greenville and its satellite camp have a total inmate population of 1210).

Mr. Martin initially filed a pro se motion for compassionate release with supporting documents. Dkts. 175, 182, 186. Mr. Martin argues that due to his medical conditions, he is at risk of severe illness should he contract COVID-19. *Id.* Mr. Martin also contends that his 80-year-old grandmother suffers from congestive heart failure, chronic kidney disease, diabetes, generalized weakness and bilateral knee osteoarthritis. Dkt. 196-1. Though Mr. Martin's sister and his mother currently bring her food, check on her and take her to her medical appointments, Mr. Martin would like to be released so he can serve as her caretaker. Dkt. 182 at 18. The Court appointed counsel, dkt. 178, and appointed counsel filed a memorandum in support of the motion for compassionate release, dkt. 187. The United States filed a brief in opposition to the motion, dkt. 192, and Mr. Martin did not file a reply.

The Court subsequently ordered Mr. Martin to show cause why the Court should not deny his motion for compassionate release because the risk presented by the COVID-19 pandemic no longer presents an extraordinary and compelling reason for his release. Dkt. 193. The Court also required Mr. Martin to explain whether he has received the COVID-19 vaccine and, if he has not received the COVID-19 vaccine, whether he has been offered the vaccine and refused it. *Id.* Mr. Martin responded to the Court's order, arguing that "what is fair and just can be made right in the context of compassionate release. Donald argues more than his health in relation to COVID. His sentence was disproportionate to that imposed across the country under current law." Dkt. 195 at 2. More specifically, he argues that with respect to the sentencing factors under § 3553, the Court should consider his health conditions, as well as the alleged disparity between his sentence and other defendants convicted of the same crimes under current law. *Id.* at 6–7. He also argues that there was an error in the plea agreement and sentencing and, as a result, he was sentenced to 210 months of imprisonment for Count 1, instead of 120 months.[1] Dkt. 195 at 6–7. Despite the Court's

---

[1] The Court interprets Mr. Martin's submissions to raise his health conditions in relation to the COVID-19 pandemic and serving as caretaker to his grandmother as his only proffered extraordinary and compelling reasons to grant immediate release. His discussion of the alleged sentencing disparity is contained only within the § 3553 analysis. Dkts. 187 at 19-20; 195 at 6. Even if he intended to argue that the potential sentencing disparity between his sentence and the sentence he might receive under current law and/or the error in his plea agreement are extraordinary and compelling reasons to grant release, such arguments would be without merit. Compassionate release is a mechanism for inmates to seek a sentence reduction for compelling reasons, not for remedying potential errors in a conviction. *See United States v. Musgraves*, 840 F. App'x 11, 13 (7th Cir. 2021) (citing *United States v. Fine*, 982 F.3d 1117, 1118 (8th Cir. 2020)). The correct vehicle to challenge a conviction or sentence is 28 U.S.C. § 2255 or, in rare circumstances, 28 U.S.C. § 2241. *Id.* (citing *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019); *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012)). Likewise, the disparity between the sentence he received and the sentence he might receive if sentenced today under a non-retroactive statutory change is not an extraordinary and compelling reason warranting relief, whether considered alone or in combination with any other reasons. *See United States v. Thacker*, 4 F.4th 569, 574–76 (7th Cir. 2021) ("[T]he discretion conferred by § 3582(c)(1)(A) does not include authority to reduce a mandatory minimum sentence on the basis that the length of the sentence itself constitutes an extraordinary and compelling reason warranting a sentence reduction.").

explicit instruction to do so, Mr. Martin's show-cause response did not include any information about his vaccination status. The motion is now ripe for decision. As explained below, Mr. Martin has not presented an extraordinary and compelling reason warranting relief under § 3582(c)(1)(A). Thus, his motion must be denied.

## II.   Discussion

The general rule is that sentences imposed in federal criminal cases are final and may not be modified.  18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act was enacted on December 21, 2018, only the Director of the BOP could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018).  The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . ..

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).  It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c).  U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations:  first, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement,"  U.S.S.G. § 1B1.13(1)(A), (3); second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g),"  U.S.S.G. § 1B1.13(2); finally, the sentencing factors in 18 U.S.C. § 3553(a) "to the extent they are applicable," U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)–(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or

registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.* Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . .."). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F. 3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

### A.  COVID-19

The risk that Mr. Martin faces from the COVID-19 pandemic is not an extraordinary and compelling reason to release him.[2] While the Court sympathizes with Mr. Martin's fear of becoming infected with the virus, the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD01, dkt. 33 (S.D. Ind. Aug. 12, 2020) (concluding that the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction).

Mr. Martin suffers from at least two health conditions (depression and obesity), dkt. 187 at 2, that, according to the CDC (Centers for Disease Control and Prevention), can make you more likely to get severely ill from COVID-19, *see* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 20, 2021). Earlier in the pandemic, the Court found on several occasions that a defendant had established extraordinary and compelling reasons warranting release when the defendant suffered from conditions that the CDC recognized as increasing the risk of severe COVID-19 symptoms. *See*, *e.g.*, *United States v.*

---

[2] In keeping with the Seventh Circuit's instruction in *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020), the Court has considered the rationale provided by Mr. Martin's warden in denying Mr. Martin's administrative request for relief. Mr. Martin's warden appears not to have considered the possibility that Mr. Martin could show an "extraordinary and compelling reason" under Subsection (D) of the policy statement. *See* dkt. 184 at 5. Thus, the warden's decision provides little guidance to the Court's analysis. COVID-19.

*Johnso*n, No. 1:99-cr-59-JMS-DML-06, dkt. 317 (S.D. Ind. Mar. 11, 2021). Underlying those holdings was the understanding that the virus was difficult to control in a prison setting, in part because no vaccine had yet been made widely available.

The situation has now changed dramatically. Three vaccines are being widely distributed in the United States. Although no vaccine is perfect, studies have provided a growing body of evidence that mRNA COVID-19 vaccines offer similar protection in real-world conditions as they have in clinical trial settings, reducing the risk of COVID-19—including severe illness—by 90 percent or more among people who are fully vaccinated. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Dec. 20, 2021). The CDC also reports that the COVID-19 vaccines authorized for use in the United States offer protection against the Delta variant. https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html (last visited Dec. 20, 2021). Even after Delta became the most common variant of COVID-19, the CDC reports that fully vaccinated people's risk of being hospitalized or dying from the virus was reduced by 10 times as compared to unvaccinated people. *See* https://www.cdc.gov/mmwr/volumes/70/wr/mm7037e1.htm (last visited Dec. 20, 2021).[3] The vaccines are not 100% effective, and some vaccinated people may still get sick. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html. The CDC reports, however, that mRNA COVID-19 vaccines have been shown to provide protection against severe illness and hospitalization among people of all ages eligible to receive them, including people 65 years and older who are at higher risk of severe outcomes from COVID-19. *Id.*

---

[3] The Court notes that another variant of concern, Omicron, has recently emerged. It is not yet known how easily Omicron spreads, the severity of illness it causes, or how well available vaccines and medications work against it. https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last visited Dec. 20, 2021). The CDC has, however, stated that current vaccines are expected to protect against severe illness, hospitalizations, and deaths due to infection with the Omicron variant. *Id.*

COVID-19 vaccines have been made widely available within the BOP. In April 2021, the Director of the BOP testified that all inmates were expected to have been offered the vaccine by mid-May 2021. *See* https://www.bop.gov/resources/news/20210415_hearing.jsp (last visited Dec. 20, 2021). And the BOP has carried through with that commitment. As of December 20, 2021, the BOP has administered more than 270,000 doses of the vaccine and has fully inoculated tens of thousands of BOP staff members and inmates. *See* https://www.bop.gov/coronavirus/ (last visited Dec. 20, 2021). As stated above, Mr. Martin has not informed the Court whether he is vaccinated or not. Assuming that he is one of the nearly 90% of the inmate population at FCI Greenville that has been vaccinated, Mr. Martin's chances of being infected with COVID-19 and suffering severe symptoms if he is infected have been dramatically reduced. In addition, the fact that such a high percentage of the FCI Greenville inmate population is vaccinated should provide Mr. Martin with additional protection against infection. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Dec. 20, 2021) ("In addition to providing protection against COVID-19, there is increasing evidence that COVID-19 vaccines also provide protection against COVID-19 infections without symptoms (asymptomatic infections). COVID-19 vaccination can reduce the spread of disease overall, helping protect people around you.").  The BOP has also met with recent success in controlling the COVID-19 virus at FCI Greenville. As noted above, the BOP reports that no inmates at FCI Greenville currently have an active case of COVID-19.

To the extent Mr. Martin has declined the vaccine and remains unvaccinated, the Seventh Circuit recently held that COVID-19 could not be an extraordinary and compelling reason for release for an inmate who has declined the vaccine without an adequate medical justification. *See United States v. Broadfield*, 5 F.4th 801 (7th Cir. 2021). In so holding, the court reasoned, "[F]or

the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer far more relief than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine may still turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *Id.* at 803.

Here, nearly 90% of the inmates at Mr. Martin's facility have been fully vaccinated, and there are no inmates with current COVID-19 infections at his facility. While Mr. Martin's vaccination status is unknown, he is either vaccinated at this point and therefore at a substantially reduced risk of severe illness from COVID-19, or he has refused the vaccine and failed to allege any medical reason for doing so. Given these facts and the rationale of *Broadfield*, the Court declines to exercise its discretion to find that the risk Mr. Martin faces from the COVID-19 pandemic, whether considered alone or in conjunction with his desire to serve as a caregiver for his grandmother (as discussed below), constitutes an extraordinary and compelling reason warranting release under § 3582(c)(1)(A). *See United States v. Gaskins*, No. 1:16-cr-249-JMS-MJD-3, dkt. 274 (S.D. Ind. Feb. 16, 2021) (finding no extraordinary and compelling reason based on COVID-19 risk where defendant had been fully vaccinated).

**B.  Care for Family**

Mr. Martin also seeks compassionate release so he can serve as a caregiver for his ill grandmother.  Dkt. 196. Mr. Martin's grandmother states that she has been in and out of the hospital recently and would like to see him before it is too late. *Id.* She states that she could use Mr. Martin's help as a handyman and cook. *Id.* By Mr. Martin's own admission, however, he does not appear to be the only possible caregiver for his grandmother, as he states that his sister and his mother are both involved in her care currently. Dkt. 182 at 18. Regardless, many inmates have aging and sick

family members whom they might like to support. The desire to care for an elderly or ill family member, therefore, is not an extraordinary and compelling reason warranting a sentence reduction. *Cf. United States v. Trice*, No. 1:13-cr-222-TWP-DML-1, Dkt. 114 at 5 (S.D. Ind. Aug. 4, 2020) (collecting cases about defendants requesting compassionate release to care for elderly or ill parents); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD-1, dkt. 33 (S.D. Ind. Aug. 12, 2020) (same); *United States v. Crandle*, 2020 WL 2188865, at *3 & n.27 (M.D. La. May 6, 2020) (same); *United States v. Ingram*, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").

Whether considered separately or in conjunction with his other bases for relief, Mr. Martin's family circumstances do not establish extraordinary and compelling reasons warranting compassionate release.

Because the Court declines to find extraordinary and compelling reasons warranting release, it need not determine whether the § 3553(a) factors warrant release.

**III.    Conclusion**

For the reasons stated above, Mr. Martin's motion for compassionate release, dkt. [175], is **denied**.

**SO ORDERED.**

Date: 1/10/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel